UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.

ERNEST GREEN,
    a/k/a "Ern,"
RODSHAUN BLACK,
    a/k/a "Rashaun Black" a/k/a "Shaun,"
DANIEL RODRIGUEZ
    a/k/a "Danny," and
AMILCAR RAMOS,
    a/k/a "Gotto,"

        Defendants.

**DECISION AND ORDER**
12-CR-83S (1)(2)(3)(5)

## I. INTRODUCTION

Presently before this Court are the parties' motions in limine seeking various forms of relief. (Docket Nos. 517, 531, 534, 535, 536, 582.) For the reasons that follow, the government's motion is denied without prejudice. Defendants' motions are either granted in part and denied in part, or denied.

## II. BACKGROUND

The government alleges that Defendants kidnaped, robbed, extorted, and killed Jabril Harper on December 16, 2009. It claims that they did so after Defendant Ernest Green contacted Defendant Amilcar Ramos to inquire whom he could rob, and Ramos identified Harper as a suitable target. Others soon joined this criminal effort, including Defendant Daniel Rodriguez, who allegedly lured Harper out of his home; Defendant Rodshaun Black, who allegedly beat and shot Harper; Ramos, who allegedly drove

1

Harper around the city; and John W. Coronado, Jr.,[1] who allegedly drove Harper to Roosevelt Park, where Green and Black each allegedly shot Harper in the head and killed him.

The government further alleges that less than one month later—on January 4, 2010—Green and Black kidnaped, robbed, and extorted Morris Singer, in much the same way as they did Jabril Harper. Singer, however, was not murdered.

Stemming from these incidents, Defendants are charged in a 9-count superseding indictment.

Counts 1 through 5 of the superseding indictment relate to the robbery, extortion, kidnaping, and murder of Jabril Harper. In Counts 1 and 2, each defendant is charged with Hobbs Act conspiracy and Hobbs Act robbery and extortion, in violation of 18 U.S.C. §§ 1951 (a) and 2. In Count 3, each defendant is charged with kidnapping, in violation of 18 U.S.C. §§ 1201 (a)(1) and 2. In Count 4, Defendants Green, Black, Rodriguez, and Coronado are charged with discharge of a firearm causing death, in violation of 18 U.S.C. §§ 924 (j)(1) and 2. In Count 5, each defendant is charged with the use, brandish, and discharge of a firearm, in violation of 18 U.S.C. §§ 924 (c)(1)(A)(i), (ii), (iii) and 2.

Counts 6 through 9 of the superseding indictment relate to the robbery, extortion, and kidnaping of Morris Singer. In Counts 6 and 7, Defendants Green and Black are charged with Hobbs Act conspiracy and Hobbs Act robbery and extortion, in violation of 18 U.S.C. §§ 1951 (a) and 2. In Count 8, Defendants Green and Black are charged with

---

[1] Coronado has been severed from his co-defendants for trial. (Docket No. 571.)

kidnapping, in violation of 18 U.S.C. §§ 1201 (a)(1) and 2.  In Count 9, Defendants Green and Black are charged with the possession and brandish of a firearm, in violation of 18 U.S.C. §§ 924 (c)(1)(A)(i), (ii) and 2.

## III. DISCUSSION

Familiarity with the facts and underlying arguments raised in the various motions in limine is presumed.

Motions in limine, when granted, operate to exclude inadmissible or prejudicial evidence before it is actually offered at trial.  See Luce v. United States, 469 U.S. 38, 40 n. 2, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984).  This aids the trial process by narrowing evidentiary issues and decreasing trial interruptions.  See Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996).  Evidence is excluded before trial only when it is clearly inadmissible on all grounds.  United States v. Morel, 751 F. Supp. 2d 423, 428 (E.D.N.Y. 2010).  A court faced with a motion in limine may defer decision in order to resolve the motion in context at trial or may resolve the motion and revisit the ruling if the trial evidence does not come in as expected.  Morel, 751 F. Supp. 2d at 428 (citing Luce, 469 U.S. at 41-42).  But even if nothing unexpected occurs at trial, a court may revisit *in limine* rulings at any time in the exercise of its discretion.  Luce, 469 U.S. at 41-42.

**A.     Government's Motion in Limine**

In its motion, the government seeks to (1) preclude Defendants from introducing self-serving hearsay statements through cross-examination of government agents, (2) restrict Defendants' use of third-party statements to impeach, (3) preclude speaking objections to admission of conspiracy evidence, and (4) preclude speculative or hearsay

3

evidence of an alternate perpetrator.[2]  (Docket No. 517.)

As to the government's first request, it argues that any self-serving, exculpatory statements that Defendants made to law enforcement officers constitute inadmissible hearsay. It therefore seeks an order precluding Defendants from eliciting such statements through the cross-examination of law enforcement witnesses. The weight of authority in this area holds that self-serving, exculpatory statements are in fact inadmissible hearsay subject to exclusion, unless exclusion would unfairly distort the meaning of the declarant's admissible, non-hearsay statements. See United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999); United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982); United States v. Harper, No. 05-CR-6068L, 2009 WL 140125, at *5 (W.D.N.Y. Jan. 20, 2009). Because this Court has not been presented with any particular statements or anticipated testimony, it cannot make a pretrial ruling. It will, however, adhere to the rule that such statements are inadmissible hearsay, unless exclusion would unfairly distort the meaning of the admissible statements that the government offers into evidence. This request is therefore denied at this time, with leave to renew at trial, if necessary.

As to the government's second request, it seeks an order precluding Defendants from attempting to impeach cooperating or other witnesses by using statements contained in notes or reports kept by third-party law enforcement agents. This Court is confident that all counsel are well versed in proper impeachment techniques and aware

---

[2] The government also sought to preclude Defendant Coronado from asserting a defense of duress or coercion. Because Coronado has been severed for trial, and because he has withdrawn any defense of duress or coercion, this request is moot.

4

that "a witness may not be charged with a third party's characterization of his statements unless the witness has subscribed to them." United States v. Leonardi, 623 F.2d 746, 757 (2d Cir. 1980) (citing United States v. Rubin, 609 F.2d 51, 62 (2d Cir. 1979)). Consequently, no pretrial ruling is necessary. Any objections to impeachment techniques may be raised at trial. The government's request is therefore denied without prejudice.

As to the government's third request, it seeks an order precluding Defendants from making "speaking objections" at trial. The government anticipates that Defendants may improperly use "speaking objections" to relay instructions to the jury. As the government concedes, however, there is no basis to believe that defense counsel in this case will engage in such a strategy. If the government believes that an objection is improper, whether a "speaking objection" or not, it should so state at the time the objection is made, and, if necessary, request a curative instruction. For now, the government's motion is denied without prejudice as premature.

As to the government's final request, it seeks a ruling precluding Defendants from offering speculative or hearsay evidence of an alternate perpetrator. There is no basis at this point to enter such an order. This Court will apply the rules of evidence, including the rule against hearsay, to all evidence offered at trial. Consequently, assuming that Defendants offer admissible evidence of an alternate perpetrator, there is no basis to preclude it at this juncture. Again, the government may object at trial to any evidence it believes is improper. At this point, there is no basis to preclude Defendants from offering evidence of an alternate perpetrator. This request is therefore denied.

5

Accordingly, the government's motion in limine is denied in all respects.

**B.     Defendants' Motions in Limine**

**1.      Defendant Green's Motion in Limine**

In his motion in limine, Defendant Green seeks to (1) preclude the government from introducing co-conspirator statements under Rule 801 (d)(2)(E) that were made after the objects of the conspiracies were completed, (2) preclude evidence that Defendant Green jumped out of a third-floor window at Buffalo Police headquarters, (3) preclude evidence of Defendant Black's state conviction for possession of the alleged murder weapon, and (4) preclude the government from introducing evidence of Defendant Green's criminal record to show propensity.   (Docket No. 531.)

As to Green's first request, he seeks to preclude the government from introducing co-conspirator statements that were made after the objects of the conspiracies were completed.   The government has indicated that it will seek to introduce co-conspirator statements at trial as non-hearsay under Rule 801 (d)(2)(E) of the Federal Rules of Evidence.   Under that rule, out-of-court statements are not considered hearsay if the statements are offered against the opposing party and were made by the party's co-conspirator during and in furtherance of the conspiracy.   Such statements can be admitted if the government establishes by a preponderance of the evidence "that there was a conspiracy, that both the declarant and the party against whom the statements are offered were members of the conspiracy, and that the statements were made during and in furtherance of the conspiracy."   United States v. Rivera, No. 13-CR-149 (KAM), 2015 WL 1875658, at *22 (E.D.N.Y. Apr. 22, 2015) (citing Bourjaily v. United States, 483 U.S.

171, 175-76, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987)).  In making preliminary determinations of admissibility under Rule 104 (a), the court may consider the statements, which are presumptively unreliable, but there must also be independent corroborating evidence of the defendant's membership in the conspiracy.  See United States v. Tellier, 83 F.3d 578, 580 (2d Cir. 1996).

Whether a statement in this case meets this rule cannot be determined until trial. Without knowing the statements at issue, and without hearing trial evidence concerning the scope and duration of the conspiracy, this Court cannot rule on Green's request, other than to note that statements made clearly after a conspiracy ends (or before it begins) are generally not admissible under Rule 801 (d)(2)(E).  See United States v. Grossman, 843 F.2d 78, 83 (2d Cir. 1988); United States v. Gambardella, No. S2 10 Cr. 674 (KBF), 2012 WL 279469, *5 (S.D.N.Y. Jan. 27, 2012).  But of course, it is also true that the conspiracy between the declarant and the defendant need not be the same one charged in the indictment.  See United States v. Gigante, 166 F.3d 75, 82 (2d Cir. 1999). Because this Court is currently unaware of what specific statements will be offered or the circumstances surrounding those statements, Green's request for a pretrial ruling is denied.  This Court will resolve any further objections at the time co-conspirator statements are offered.

As to Green's second request, he seeks preclusion of evidence that he jumped from a third-floor window at Buffalo Police headquarters after a police interview.  On January 7, 2010, Green was arrested for possessing a .38 caliber handgun, which was a violation of his parole.  The handgun is in no way connected to this case.  Law

7

enforcement officers brought Green to police headquarters in connection with his arrest and also asked him about the murder of Jabril Harper. After the interview was concluded, Green escaped from a third-floor window.

The government seeks to introduce evidence of Green's escape as evidence of guilt and consciousness of guilt. Flight can, in some cases, evidence guilt or consciousness of guilt. See United States v. Glenn, 312 F.3d 58, 67 (2d Cir. 2002). The probative value of flight evidence depends on whether four inferences can fairly be drawn: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." United States v. Al-Sadawi, 432 F.3d 419, 424 (2d Cir. 2005) (quoting United States v. Myers, 550 F.2d 1036, 1049 (5th Cir. 1977)).

Here, evidence of Green's escape is relevant, but this Court finds that its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and the need to conduct a trial within a trial. See Fed. R. Evid. 403. It will therefore be precluded.

First, the thrust of the government's argument is that Green's escape is highly probative of guilt in this case because Green jumped out of the window in an "obvious attempt . . . to avoid law enforcement and their effort to speak with him regarding the Harper case." (Docket No. 543.) This is not borne out in the police report. The relevant police report states that Green jumped from the window *after* officers had asked him about Harper's murder and *after* the interview had ended. (See Docket No. 550,

8

Exhibit A.) It therefore could be argued that Green did not flee to escape law enforcement contact or questioning.

Second, introduction of this testimony would be highly prejudicial, because the jury would learn that Green was on parole and arrested for possessing a firearm, which are two issues that have nothing to do with this case.

Third, Green maintains that he jumped from the window because he feared for his safety, after having been arrested from his home and abruptly taken to police headquarters in his underwear and socks. Exploration of the circumstances of Green's arrest and custody, and the reasons for his escape, could require a trial within a trial and be confusing and distracting to the jury.

Fourth, the government has made no showing that the probative value of this evidence is supported by the four inferences in Al-Sadawi. While there appears to be sufficient evidence from which to infer that Green's behavior constituted flight, the circumstances of his flight, as discussed above, leave little room to infer that Green fled due to consciousness of guilt, or that any consciousness of guilt related to the charges in this case, as opposed to the parole violation. It necessarily follows, then, that there is an insufficient basis to make the fourth inference: consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

Finally, given the lack of evidence that Green's flight was related to the charges in this case, the jury would be left to speculate, which is impermissible. See United States v. Sanchez, 790 F.2d 245, 252 (2d Cir. 1986) (noting that evidence of flight must provide the jury with more than the opportunity for mere conjecture and speculation).

For these reasons, Green's request to preclude evidence of his flight under Al-Sadawi and Rule 403 is granted.

Green's third request is to preclude evidence of Black's state conviction for possessing the alleged murder weapon in this case. Green essentially asserts a spillover argument: that he will be unfairly prejudiced by the introduction of Black's conviction because it does not pertain to him. Limiting instructions, however, ameliorate the prejudice arising from this type of evidence and juries are presumed to follow the court's instructions. See United States v. Rittweger, 524 F.3d 171, 179 (2d Cir. 2008) (rejecting claim of prejudicial spillover where "the district court gave limiting instructions throughout the trial explaining when evidence could not be considered against a particular defendant, and the jury charge carefully explained that the jurors must consider the case against each defendant separately"). "Indeed, 'limiting instructions to the jury have emerged as the preferred device for curing any prejudicial spillover that may result from a multi-defendant, multi-count trial.'" United States v. Santana, No. 13 CR 147 (KMW), 2015 WL 5781413, at *4 (S.D.N.Y. Oct. 1, 2015) (quoting United States v. Santiago, 174 F. Supp. 2d 16, 22 (S.D.N.Y. 2001)). Moreover, Black's possession of the alleged murder weapon is relevant as to Green, because the weapon is alleged to have been used in and in furtherance of the conspiracy in which Green is named. Green's request is therefore denied.

Finally, Green seeks an order precluding the government from introducing his criminal record or other bad acts as propensity evidence. Propensity evidence, of course, is prohibited under Rule 404 (b)(1). Green does not move against any specific

evidence and the government's only response is that it reserves its right to impeach Green with his convictions under Rule 609, if Green testifies. There being no particular evidence at issue, Green's motion for preclusion is denied without prejudice.

Accordingly, Green's Motion in Limine is granted in part and denied in part.

## 2. Defendant Rodriguez's Motion in Limine

In his motion in limine, Defendant Rodriguez seeks (1) exclusion of his in-court identification, (2) disclosure or exclusion of co-conspirators' statements, (3) disclosure or exclusion of Rule 804 (b)(3) hearsay statements, (4) disclosure or exclusion of co-conspirator liability evidence, (5) disclosure or exclusion of "other conspiracy" evidence, (6) disclosure or exclusion of evidence regarding the background or formation of the conspiracy, and (7) exclusion of Defendant Black's state court conviction. (Docket No. 534.)

As to Rodriguez's first request, he anticipates that several of the government's witnesses may be asked to identify him at trial without ever having engaged in any out-of-court identification procedures. This, he contends, puts him at a distinct disadvantage, because he is Hispanic and will be sitting next to his Caucasian defense attorney, resulting in an unfairly suggestive identification procedure. Rodriguez therefore requests an order requiring the government to provide the foundation for any in-court identification outside the presence of the jury.

"Where the circumstances of . . . an at-trial identification are suggestive, reliability is the linchpin for determining admissibility." United States v. Matthews, 20 F.3d 538, 547 (2d Cir. 1994) (citing Manson v. Brathwaite, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L.

11

Ed. 2d 140 (1977)).  But "[e]ven an identification at trial under circumstances that are tantamount to a showup is 'not per se inadmissible, but rather depend[s] upon the 'totality of the circumstances.'"  Id. (quoting United States v. Archibald, 734 F.2d 938, 942 (2d Cir. 1984)).  Because an at-trial identification in some circumstances could be "tantamount to a showup," the Second Circuit has held that "the trial court has discretion to take steps to avoid any unfairness in the in-court identification."  Matthews, 20 F.3d at 547.  A court is not required to take such steps *sua sponte*, however; it is incumbent on the defendant to request measures designed to ameliorate any suggestiveness.  See id.  For example, a defendant may request "to be seated somewhere other than at the counsel table, or not to be present, or to be placed in a lineup prior to the in-court identification."  Id.

Rodriguez requests exclusion of his in-court identification or an order requiring the government to provide the foundation for any in-court identification outside the presence of the jury.  In the absence of a meaningful objection by the government (it does not specifically address Rodriguez's suggestiveness arguments), and to assist in determining whether any measures need be taken as contemplated in Matthews, this Court will require a proffer from the government outside the jury's presence before any witness's in-court identification of Rodriguez.  This Court will then determine what, if any, measures must be taken to ameliorate any unfair suggestiveness. Consequently, Rodriguez's request to exclude an in-court identification is denied, but this Court will engage in the procedure identified above to ensure that any identification is not unduly suggestive.

Rodriguez's second, third, fourth, fifth, and sixth requests each seek disclosure of

co-conspirators' statements and other co-conspirator evidence that the government intends to introduce at trial. Rodriguez wants the government to identify each particular statement it seeks to introduce at trial and then for this Court to conduct a hearing outside the presence of the jury to determine whether each statement is admissible under the Federal Rules of Evidence. The government is not obligated to identify each statement it seeks to introduce, nor has Rodriguez provided any authority requiring pre-trial disclosure of the statements he seeks, which would be akin to a bill of particulars. In addition, this Court finds no cause to hold the foundational hearings that Rodriguez suggests. The government is keenly aware of what it must establish to admit co-conspirator statements under the rules of evidence. Specific proffers for each particular statement conducted outside the presence of the jury is unnecessary. Rodriguez may object to any statement offered by the government, after which this Court will determine admissibility. These requests are therefore denied.

Rodriguez's seventh request is for this Court to exclude Defendant Black's state court conviction for possessing the alleged murder weapon. For the same reasons discussed above in the context of Defendant Green's request, Rodriguez's request is denied.

Accordingly, Rodriguez's motion in limine is granted in part and denied in part.

### 3. Defendant Ramos's Motions in Limine

In his first motion in limine, Defendant Ramos seeks (1) exclusion of evidence relating to a February 9, 2010 burglary, (2) preclusion of in-court identification, (3) preclusion of co-conspirators' statements, and (4) preclusion of criminal history and other

bad-act evidence. (Docket No. 535.) In his second motion, Ramos seeks preclusion of hearsay statements made by one of the government's confidential witnesses. (Docket No. 582.)

As to Ramos's first request, he moves to exclude evidence of his involvement in a burglary that occurred on February 9, 2010. According to the government, it will present a witness who will testify that he (the witness), Ramos, and Coronado committed a home invasion and burglary at 17 Elmview Place in Buffalo on February 9, 2010. This witness will testify that they approached the victim with a gun outside of his house, walked him into his house, and then stole money and jewelry. This witness will testify that they targeted the victim because they believed he had a substantial amount of money from drug dealing.

Ramos argues that this evidence must be precluded because he did not have sufficient notice that the government would introduce it and it is improper under Rule 404 (b). He also questions the veracity of the testimony the government intends to offer. The government maintains that the evidence is admissible to prove motive, intent, common scheme, and plan under Rule 404 (b), and is also admissible as evidence of the existence of the conspiracy.

Rule 404 (b) of the Federal Rules of Evidence prohibits the use of propensity evidence. In particular, it states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404 (b)(1); see also Huddleston v. United States, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988).

14

But evidence of other crimes, wrongs, or acts may be admissible for some other purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404 (b). Under the Second Circuit's "inclusionary approach," other-act evidence may be admitted for any purpose other than to show a defendant's criminal propensity. United States v. LaFlam, 369 F.3d 153, 156 (2d Cir. 2004).

To be admissible, the Rule 404 (b) evidence must be:

(1) offered for a proper purpose (Rule 404 (b));

(2) relevant to a disputed issue (Rule 402);

(3) of probative value that is not substantially outweighed by its prejudicial effect (Rule 403); and

(4) subject to an appropriate limiting instruction to the jury, if requested.

See United States v. Edwards, 342 F.3d 168, 176 (2d Cir. 2003).

Also relevant is the Second Circuit's approach to certain evidence of uncharged criminal activity. In particular, the Second Circuit has found that "evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404 (b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." See United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (citing United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997)).

15

Here, this Court finds that evidence concerning the February 9, 2010 robbery is admissible both under Rule 404 (b) and as direct evidence of the existence of the conspiracy. The government is offering the evidence for a proper purpose to show motive, intent, absence of mistake, or lack of accident. The circumstances of the February 9, 2010 robbery are similar to the allegations in the indictment: that the victim was a drug dealer targeted because he was thought to have money and confronted with a gun and robbed. This evidence is thus relevant and probative of the charges in the superseding indictment. Although the evidence is prejudicial, it is not unfairly prejudicial and the probative value is not substantially outweighed by its prejudicial effect. And this Court will give an appropriate curative instruction, if requested. Finally, from what this Court can glean at this early stage, this evidence appears admissible as direct evidence of the existence and perhaps the formation of the conspiracy.

As to Ramos's remaining arguments, he has had notice of this evidence since at least September 5, 2017, almost two months before trial. Moreover, Ramos's challenges to the weight, veracity, and reliability of the evidence are not properly resolved by this Court, but rather, must be assessed by the jury during trial.

Accordingly, Ramos's request to preclude evidence of the February 9, 2010 robbery is denied.

Ramos's second request concerning his in-court identification by government witnesses mirrors Rodriguez's request. Consequently, this Court's ruling as to Rodriguez will apply equally to Ramos.

As to Ramos's third request, he seeks disclosure and preclusion of co-conspirator statements that do not fall within Rule 801 (d)(2)(E). For the reasons discussed above, Ramos is not entitled to the pretrial disclosure he seeks. This Court will rule on the admissibility of co-conspirator statements at trial, where Ramos is free to lodge any objections.

As to Ramos's next request, he seeks the preclusion of his criminal history and any bad-act evidence. No specific evidence is referenced, and the government responds by simply noting that it reserves its right to impeach Ramos with his prior convictions, if he elects to testify. As such, there is no issue for this Court to resolve at this juncture.

Finally, Ramos seeks an order precluding the government from offering the hearsay testimony from Protected Witness #12 that was presented to the grand jury. The government acknowledges its understanding of the hearsay rules and confirms that it will not offer hearsay evidence unless an exception to the hearsay rules exists. Consequently, there is no issue for this Court to resolve.

Accordingly, Ramos's first motion in limine is granted in part and denied in part. His second motion in limine is denied as moot.

### 4. Defendant Black's Motion in Limine

In his motion in limine, Defendant Black seeks (1) preclusion or re-testing of DNA evidence, (2) preclusion of evidence concerning his parole status, (3) production of Jencks material, (4) preclusion of evidence of uncharged crimes, and (5) preclusion of evidence concerning his statements to informants. (Docket No. 536.)

As to Black's first request, he seeks re-testing of various items that the government submitted to the Erie County Department of Police Services Forensic Laboratory for DNA testing. The government has agreed to re-test the items at issue. As far as this Court is aware, the re-testing has been completed. Accordingly, this request is moot.

As to Black's second request, he seeks to preclude the government from offering any evidence that he was on state parole at the time of his arrest. The government counters that this evidence is inextricably intertwined with the proof of the case, because the alleged murder weapon was discovered during a parole search of Black's residence. Thus, this evidence is necessary to show Black's connection to and possession of the alleged murder weapon.

Based on this proffer by the government, this Court cannot rule at this time that this evidence is inadmissible. Evidence of Black's status as a parolee very well may be admissible as inextricably intertwined given the circumstances under which the alleged murder weapon was discovered. It could also be that this evidence can be presented without reference to Black's parolee status. This Court will need to hear a further proffer or consider the trial evidence before making a final determination. For now, Black's motion to preclude is denied.

As to Black's third request, he seeks an order requiring the government to produce <u>Jencks</u> material. This request is now moot because the government has already produced <u>Jencks</u> material to Defendants.

As to Black's fourth request, he seeks to preclude testimony of bad acts, uncharged crimes, and prior convictions under Rules 404 (b) and 609. No specific

evidence is referenced, and the government responds by simply noting that it reserves its right to impeach Black with his prior convictions, if he elects to testify, and that it may introduce uncharged conduct to prove the formation and existence of the conspiracy. As such, there is no issue for this Court to resolve at this juncture. Black may lodge his objections to this type of evidence when it is offered at trial. For now, his motion to preclude is denied.

Finally, Black seeks preclusion of any statements he made to informants on the basis that the government's disclosure of the statements was either late or never occurred. He relies on Rule 12 as a basis for preclusion, but that rule is a procedural device intended to facilitate efficient pretrial motion practice, not to act as an avenue for preclusion. See Rule 12 (b)(4)(B); see also United States v. Koschtschuk, No. 09-CR-96S (M), 2010 WL 584018, at *10 (W.D.N.Y. Feb. 16, 2010). The government represents that Black had notice of informant statements or has long had the opportunity to review the informant statements at the United States Attorney's Office. In light of this access, this Court finds no grounds for pretrial preclusion.

Accordingly, Black's motion in limine is denied.

## IV. CONCLUSION

For the reasons stated above, the government's motion in limine is denied without prejudice. Defendants' motions in limine are either granted in part and denied in part, or denied.

## V. ORDERS

IT HEREBY IS ORDERED, that the government's Motion in Limine (Docket No.

19

517) is DENIED without prejudice.

FURTHER, that Defendant Green's Motion in Limine (Docket No. 531) is GRANTED in part and DENIED in part.

FURTHER, that Defendant Rodriguez's Motion in Limine (Docket No. 534) is GRANTED in part and DENIED in part.

FURTHER, that Defendant Ramos's Motion in Limine (Docket No. 535) is GRANTED in part and DENIED in part.

FURTHER, that Defendant Ramos's Motion in Limine (Docket No. 582) is DENIED.

FURTHER, that Defendant Black's Motion in Limine (Docket No. 536) is DENIED.

SO ORDERED.

Dated:    October 25, 2017
           Buffalo, New York

                                    /s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                  United States District Judge